UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES PAES** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-1069** |
| **ROWAN COMPANIES, INC.** | **SECTION "I"** |

### ORDER AND REASONS

Before the Court is a motion[1] *in limine* filed by defendant, Rowan Companies, Inc., to exclude the expert report and testimony of Robert E. Borison. Plaintiff, Charles Paes, has filed an opposition.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

Plaintiff, Charles Paes ("Paes"), alleges that on or about February 29, 2012, he was injured while employed by defendant, Rowan Companies, Inc. ("Rowan"), as a Jones Act seaman on the M/V JOE DOUGLAS.[3] Paes testified that, at the time of the accident, he was assisting in the transfer of casing bundles from a supply vessel.[4] According to Paes, the crane operator lifted a bundle of casing from the supply vessel and positioned it over a pipe rack on the M/V JOE DOUGLAS where he and Heath Waltman ("Waltman") were positioned to receive the bundles.[5] Paes testified that he successfully grabbed his tagline in an effort to steady the load,

---

[1] R. Doc. No. 29.

[2] R. Doc. No. 39.

[3] R. Doc. No. 1.

[4] R. Doc. No. 29-3, at p. 18.

[5] *Id.* at 29.

but the casing swung into him and knocked him down.[6] Paes claims that he injured his shoulder as he fell on the pipe rack attempting to avoid the load.[7]

Paes hired Robert E. Borison ("Borison") to prepare an expert report in connection with this lawsuit.[8] Borison states in his report that his expertise derives from his "[o]ver 30 years experience in the fields relating to the exploration, production and transport [sic] of oil and gas and the marine industry."[9] Borison states that his experience includes working with "production platforms, barges (pipe laying, dredging, drilling, jack ups, lift-boats, spud, supply, deck, oil, tank, etc.), structural, fabrication yards, and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.)."[10] Borison also states that he has significant experience as a safety supervisor, particularly with respect to the operations of cranes and rigging work procedures.[11] Borison's report states that the methodology he used to reach his conclusions consisted of an accident investigation analysis based on a job safety analysis and a root cause analysis.[12]

After reviewing the deposition testimony of Paes and other documentary evidence, Borison concluded that improper training and safety procedures caused the accident.[13] Borison concluded that improper training was a "contributing cause" of the accident on the ground that

---

[6] *Id.* at 30-31.

[7] *Id.* at 30-31, 35-42.

[8] R. Doc. No. 29-2, at p. 29.

[9] *Id*. at 30-31.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 31-32.

[13] *Id.* at 32-39.

2

> Mr. Paes' accident was the failure of Rowan's Company Inc. [sic] to expose Mr. Paes to the duties associated with being a rigger on an offshore drilling rig for several months until they were satisfied that he was sufficiently familiar with the work and hazards associated with the work.  Only then, after the extensive training period, should Mr. Paes have been sent to be tested before issuing him a rigger certification.[14]

Borison states that "it is reasonable to conclude" that Waltman and the signalman experience were likely inexperienced as well, but he acknowledges that the extent of their experience "has not been established."[15]  Borison further states that Paes should not have been allowed to perform rigging duties associated with moving heavy lifts while standing on the casing.[16]

Borison next concluded that improper safety procedures were a "direct cause" of the accident on the ground that

> Mr. Paes' accident was the failure of Mr. Deweese, the signalman, to stop the descent of the load when the tag lines were able to be reached by Mr. Waltman and Mr. Paes.  Once the two workers had control of the taglines and were in a position to control the casing using the tag lines in conjunction with each other, then and only then should Mr. Deweese have signaled the Crane Operator to lower the load.[17]

Borison's report states that it is unknown why the signalman allowed the load to be lowered to waist level before Paes and Waltman had control of the taglines or why Waltman failed to grasp his tagline.[18]  Borison references a publication by the American Petroleum Institute for the

---

[14] *Id.* at 33-36.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 36-38.

[18] *Id.*

3

proposition that the crane operator and signal person should ensure that the crane lift and swing paths are clear of obstructions and personnel.[19]

Rowan filed this motion *in limine* to exclude Borison's testimony and report.[20] Rowan contends that Borison's testimony should be excluded because (1) his methodology is flawed and fails to meet the *Daubert* standard; (2) his opinions will not assist the jury in understanding the evidence or in determining the facts at issue; and (3) he has offered impermissible legal conclusions.[21] Paes responds that Borison's methodology satisfies the *Daubert* standard as it is based on his extensive experience and takes into account the relevant facts of the case as presented to him.[22] Paes contends that Borison's expert testimony is needed to explain the nature of crane operations and proper rigging procedures in light of Rowan's denial that its training and operating procedures were improper.[23] Finally, Paes contends that Borison's testimony regarding the cause of the accident does not entail any legal conclusions.[24]

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

---

[19] *Id.*

[20] R. Doc. No. 29.

[21] *Id.*

[22] R. Doc. No. 39.

[23] *Id.*

[24] *Id.*

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524. *See also Kumho Tire Co.*, 526 U.S. 137, 151, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id. See Daubert,* 509 U.S. at 596.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v.*

5

*Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the

dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note)).

## *DISCUSSION*

Rowan first argues that Borison's report and testimony should be excluded because his methodology is flawed and unreliable. Rowan argues that, despite the fact that Borison's own description of his methodology requires consideration of the job safety analysis, Borison failed to consider the job risk analysis performed by Rowan employees before the accident occurred. Rowan also argues that Borison's opinions have never been tested according to scientific methods which, Rowan claims, must include an inspection of the rig and work area involved in the accident. Rowan further argues that Borison reached his conclusions without knowing all of the relevant facts including the testimony of witnesses other than Paes.

Although Rowan contends that Borison failed to utilize his own methodology when he failed to consider Rowan's job risk analysis, Rowan overlooks the fact that Borison specifically identified the job risk analysis as a document he considered when forming his opinion. Moreover, as another section of this Court has noted, the *Daubert* inquiry does not require a physical investigation of the accident site in every case. *See Vincent v. Shamrock Mgmt.*, No. 09-3970, R. Doc. No. 83 (E.D. La. June 23, 2011) (Berrigan, J.). Similarly, Rowan's arguments that Borison reached his conclusions without considering all of the relevant witness testimony go to the weight to be assigned his opinion rather than its admissibility. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). Accordingly, Rowan's arguments concerning the sources and basis of Borison's expert opinion are more appropriately

7

addressed on cross-examination.  *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Rowan next argues that Borison's testimony should be excluded because it would not assist the jury.  Rowan contends that the facts of this case are not complicated and that a jury is capable of determining on its own whether Paes was properly trained and whether the crewmembers safely performed the job.

As the cases Rowan cites indicate, this Court has often excluded expert testimony in routine personal injury cases after finding that the issues could be resolved based on commonsense and ordinary experience.  *See e.g.*, *Thomas v. Global Explorer, LLC*, No. 02-1060, 2003 WL 943645 (E.D. La. Mar. 3, 2003) (Vance, J.) (plaintiff injured after falling from ladder); *Roy v. Fla. Marine Transporters, Inc.*, No. 03-1195, 2004 WL 551208 (E.D. La. Mar. 18, 2004) (Vance, J.) (plaintiff injured after falling off milk crate); *Marshall v. Supreme Offshore Servs., Inc.*, No. 10-3198,  2011 WL 6258487 (E.D. La. Dec. 15, 2011) (Vance, J.) (plaintiff injured after slipping on welding rod left in hallway); *Mang v. Parker Drilling Offshore, L.L.C.*, No. 99-3361, 2001 WL 179920 (E.D. La. Feb. 22, 2001) (Clement, J.) (plaintiff injured after "rolling out of bed").

In this case, however, Borison's testimony relates to less obvious matters involving maritime safety procedures for crane operations, rigging, and seaman training.  The Court finds that Borison's specialized knowledge and testimony may assist the jury in its consideration of the issues outlined in his report.  Nonetheless, the Court agrees with Rowan that Borison's conclusion regarding causation would not assist the jury.  In this particular case,  the jury is capable of determining the cause of Paes' accident without Borison's opinion on the matter.  *See*

*e.g.*, *Hargrave v. Blake Drilling & Workover Co.*, No. 07-985, 2008 WL 2625524, at *3 (E.D. La. Feb. 12, 2008) (Africk, J.); *Akins v. Chet Morrison Offshore, L.L.C.*, No. 05-6608, 2007 WL 5011916, at *1 (E.D. La. Dec. 28, 2007) (Engelhardt, J.); *but see Lee v. Central Gulf Towing, LLC*, No. 04-1497, 2005 WL 6773727, at *5 (E.D. La. Aug. 1, 2005) (Duval, J.) (explaining that under Federal Rule of Evidence 704, expert testimony concerning causation is not objectionable as an impermissible legal conclusion).

### *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that Rowan's motion *in limine* is **GRANTED IN PART.** Borison will not be permitted to testify with respect to his opinions concerning the "direct cause" or "contributing cause" of the accident. The motion is **DENIED** in all other respects.

New Orleans, Louisiana, February 26, 2013.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**